BOARD OF COMMISSIONERS OF GREENE COUNTY and J. L. EDWARDS, TREASURER, v. FIRST NATIONAL BANK OF SNOW HILL ET AL.

(Filed 9 November, 1927.)

**1. Banks and Banking—Merger—Voluntary Dissolution.**

When an existing bank is absorbed by another bank, it is in effect, a voluntary dissolution of the bank thus taken over.

**2. Same—Statutes—Liability of Shareholders—Contracts.**

The additional liabilities of a stockholder in a National bank to that ordinarily existing as to shareholders in other corporations, arises by

operation of a statute at the time the stock was purchased, as secondary to the general liabilities of the bank, and not as express or implied promise to pay by contract.

### 3. Same—Courts—Jurisdiction—Federal Courts.

A bank organized under the Federal laws whether it has entered into liquidation voluntarily or not, is under the control of the Comptroller of the Currency of the United States, and the question of the enforcement of the additional liability of its stockholders is one falling alone within the jurisdiction of the Federal Courts.

APPEAL by defendants from *Cranmer, J.,* at February Term, 1927, of GREENE.

Plaintiffs brought suit against the First National Bank of Snow Hill, its officers, directors and stockholders for the appointment of a receiver for said bank to the end that the stockholders be assessed to the full par value of their stock for the benefit of the creditors and the depositors of the bank.

The material allegations in the complaint may be summarized as follows: (1) The First National Bank of Snow Hill was organized as a National bank with a capital of $50,000; (2) it was appointed financial agent of Greene County; (3) the county turned over to it as such agent, besides current county funds, $300,000 derived from the sale of bonds issued by the county for the purpose of building hardsurface roads; (4) the county ordered the bank to pay this amount to the State Highway Commission; (5) the bank was not able to do so, but acknowledged the State Highway Commission as its depositor to the amount of $300,-000; (6) unable to pay cash it gave the commission a penal bond to make good the deposit, the sureties being of doubtful solvency; (7) afterwards the Legislature authorized the board of commissioners to receive from the commission the evidence of its deposit (P.-L. Laws 1927, ch. 426) and provided that the commission should thereupon be released and discharged; (8) the plaintiffs now own the deposit; (9) in December, 1923, or January, 1924, the First National Bank of Snow Hill was absorbed by and merged into the Bank of Greene, a State bank licensed by the Corporation Commission with a capital stock of $25,000; (10) the Bank of Greene agreed to assume and pay "all debts, depositors, and creditors of the First National Bank of Snow Hill, save and except the stock liability of the stockholders"; (11) at the time of the merger the First National Bank was insolvent and its officers, directors and stockholders effected the merger with intent to hinder, delay and defeat its creditors and depositors; and (12) the Bank of Greene is insolvent, a receiver therefor having been appointed 25 September, 1925.

The dates of various transactions are not given in the complaint, but from the act of 1927, which is referred to in the complaint, it appears that the deposit of $300,000 in the First National Bank was made by the county about 1 July, 1921, and that demand for payment was made by the commission on 29 November, 1922.

The defendants demurred to the complaint on the following grounds: (1) The complaint does not state a cause of action; (2) the Superior Court of Greene County was without jurisdiction to hear and determine the alleged cause of action; (3) if a cause of action exists it can be maintained only by the State Highway Commission; (4) if the board of commissioners had any right to or interest in the deposit in the Bank of Greene it arose out the transfer by the commission under the special act of the Legislature, and the plaintiffs have no claim against any deposit in the First National Bank of Snow Hill; (5) under the direction of the Comptroller of the Currency the First National Bank of Snow Hill was dissolved and liquidated and the plaintiffs have no enforceable claim against the bank or the defendants.

The demurrer was overruled and the defendants excepted and appealed.

*George M. Lindsay for plaintiffs.*
*L. I. Moore and J. Paul Frizzelle for defendants.*

ADAMS, J. It is alleged in the complaint that in December, 1923, or January, 1924, the First National Bank of Snow Hill, which had previously conducted a general banking business under the license and supervision of the Comptroller of the Currency, was absorbed by and merged into the Bank of Greene. This in effect is an allegation of voluntary dissolution. On 25 September, 1925, a receiver was appointed for the Bank of Greene, which was insolvent, and in June, 1926, the present action was brought in the Superior Court of Greene County to procure the appointment of a receiver for the First National Bank of Snow Hill with a view to assessing the stockholders thereof to the amount of their stock at its par value. The crucial questions are whether the Superior Court of Greene County had jurisdiction and whether the plaintiffs can maintain their action.

National banks can be organized only upon the conditions and in the mode prescribed by the acts of Congress, and when organized they are subject to the provisions of the Federal law. U. S. Compiled Statutes, 9657 *et seq.;* R. S., 5134; 12 U. S. Code Anno., sec. 22. In *McCulloch v. Maryland,* 4 Wheat., 316, 4 Law Ed., 579, *Marshall, C. J.,* elucidating the principle that the Constitution and the laws made in pursuance

thereof are supreme and that they control the constitution and laws of the respective States, defined it as a principle "which so entirely pervades the Constitution, is so intermixed with the materials which compose it, so interwoven with its web, so blended with its texture, as to be incapable of being separated from it without rendering it into shreds." And in *Davis v. Elmira Bank*, 161 U. S., 275, 40 Law Ed., 700, *Mr. Justice White* specifically applied the principle in these words: "National banks are instrumentalities of the Federal Government, created for a public purpose, and as such necessarily subject to the paramount authority of the United States. It follows that an attempt by a state to define their duties or control the conduct of their affairs is absolutely void, wherever such attempted exercise of authority expressly conflicts with the laws of the United States, and either frustrates the purpose of the national legislation, or impairs the efficiency of these agencies of the Federal government to discharge the duties for the performance of which they were created. These principles are axiomatic, and are sanctioned by the repeated adjudications of this Court." See *Farmers, etc., Bank v. Dearing*, 91 U. S., 29, 23 Law Ed., 197; *Christopher v. Norvell*, 201 U. S., 216, 50 Law Ed., 733; 3 R. C. L., 656, sec. 287; 7 C. J., 760, sec. 585.

"The stockholders of every national banking association shall be held individually responsible for all contracts, debts, and engagements of such association, each to the amount of his stock therein, at the par value thereof in addition to the amount invested in such stock. The stockholders in any national banking association who shall have transferred their shares or registered the transfer thereof within sixty days next before the date of the failure of such association to meet its obligations, or with knowledge of such impending failure, shall be liable to the same extent as if they had made no such transfer, to the extent that the subsequent transferee fails to meet such liability; but this provision shall not be construed to affect in any way any recourse which such shareholders might otherwise have against those in whose names such shares are registered at the time of such failure." U. S. Compiled Stats., 9689; 12 U. S. Code Anno., sec. 64.

If the promise raised by this statute be interpreted as a contract with the creditors to pay a sum equal to the value of the stock taken in addition to the sum invested in the shares, still it is a contract created by the statute and obligatory upon the stockholders because the statute was in force when they subscribed for the stock. It was so held in *McDonald v. Thompson*, 184 U. S., 71, 46 Law Ed., 437, the Court observing that in none of the numerous cases upon the subject was the obligation treated as an express contract of the stockholders to take and pay for the shares in the association." The statute does not mean

that the stockholder makes a promise to the creditor as a surety for the debt of the corporation; it imposes a liability on him as secondary to the debts which remain distinct, and to which the stockholder is not a party. *McClaine v. Rankin,* 197 U. S., 155, 49 Law Ed., 702.

With respect to National banks liquidation is voluntary or involuntary. As to the latter it is provided that on becoming satisfied that any association has refused to pay its circulating notes as required and is in default, the Comptroller of the Currency may appoint a receiver who shall take possession of the books, records and assets of the bank, collect its claims, sell its property, and if necessary enforce the individual liability of the stockholders. U. S. Compiled Stats., 9821; R. S., 5234; 12 U. S. Code Anno., sec. 192. The original act contained no provision for enforcing such individual liability in case of voluntary liquidation; but this omission was supplied by the act of 30 June, 1876. U. S. Compiled Stats., 9807; 12 U. S. Code Anno., sec. 65. It is therein provided that when any national banking association shall have gone into voluntary liquidation the individual liability of the shareholders may be enforced by any creditor's bill, brought by such creditor on behalf of himself and of all other creditors of the association against the shareholders thereof in any court of the United States having original jurisdiction in equity for the district in which such association may have been located or established.

It is needless to venture a discussion of the question whether the statutory remedy is exclusive or cumulative, a question concerning which there is apparently a difference of .opinion. *Williamson v. American Bank,* 115 Fed., 793, 52 C. C. A., 1; *King v. Pomeroy,* 121 Fed., 287, 58 C. C. A., 209. It results, in either event, that the present action cannot be maintained. Other grounds of the demurrer may interpose barriers which cannot be removed.

The demurrer should have been sustained and the action dismissed.

Reversed.